831 So.2d 803 (2002)
Allan BELSKY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-2899.
District Court of Appeal of Florida, Fourth District.
December 11, 2002.
Carey Haughwout, Public Defender, and Jennifer Brooks, Assistant Public Defender, West Palm Beach, for appellant.
Richard E. Doran, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR. J.
Alan Belsky pled no contest to possession of Alprazolam, possession of drug paraphernalia, and unlawful use of a false name. He reserved the right to appeal the denial of his motion to suppress. We reverse, because the arresting officer lacked probable cause to arrest appellant for giving a false name under section 901.36, Florida Statutes, when appellant *804 had not been arrested or lawfully detained prior to giving the officer a false name.
At the suppression hearing, the arresting officer testified that he was on road patrol in a high crime area when he observed appellant and another man engaged in what appeared to be a hand-to-hand transaction. The officer acknowledged that he did not know what, if anything, was actually exchanged. However, believing that the men were involved in a drug transaction, he turned his vehicle around, parked it, and approached appellant.
The officer began by asking appellant how he was doing. Appellant stopped and talked to the officer. The officer then questioned appellant from a field interrogation card. He asked appellant his name. Appellant responded that his name was Jeffrey Snitzer. The officer returned to his patrol car and ran a computer check on the name. Because the computer search did not reveal a driver's license under that name, the officer suspected that appellant was lying about his name. According to the officer, at that point he decided that appellant was no longer free to leave and detained him for further investigation.
The officer confronted appellant with the results of the driver's license search and asked him to repeat his name and spell it. Appellant gave the same name and spelled it. After conducting a second computer search for the name and not finding it, the officer noticed appellant's wallet in his back pocket. He asked for appellant's license; it showed the name "Allan Belsky." The officer then placed appellant under arrest for giving a false name to a law enforcement officer. During a search incident to the arrest, the officer found two Alprazolam pills and a syringe on appellant's person.
At the suppression hearing, appellant argued that the officer lacked reasonable suspicion to detain him and thus lacked probable cause to arrest him for giving a false name while detained. Section 901.36, Florida Statutes, provides that "[i]t is unlawful for a person who has been arrested or lawfully detained by a law enforcement officer to give a false name ..." (Emphasis supplied). Thus, whether appellant's arrest for giving a false name was lawful depends upon whether appellant was lawfully detained at the time.
To detain a person for investigation, an officer must have a reasonable suspicion, based on objective, articulable facts, that the person has committed, is committing, or is about to commit a crime." § 901.151(2), Fla. Stat. (2000); Terry v. Ohio, 392 U.S. 1; 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether an officer has a founded suspicion for a stop depends on the totality of the circumstances, in light of the officer's knowledge and experience. Ippolito v. State, 789 So.2d 423, 425 (Fla. 4th DCA 2001). A bare suspicion or "mere "hunch" that criminal activity may be occurring is not sufficient." Id.
An officer's observation of hand-to-hand movements between persons in an area known for narcotics transactions, without more, does not provide a founded suspicion of criminal activity. See Waddell v. State, 652 So.2d 917 (Fla. 4th DCA 1995)(holding that a deputy who observed two unknown black males approach a vehicle driven by a white male and saw only arms going in and out of the truck, without witnessing the exchange of money or drugs, did not have a founded suspicion to justify stopping the vehicle); Clark v. State, 648 So.2d 848 (Fla. 4th DCA 1995)(holding that an officer's observation of three people gathered in an area known for drug transactions, showing something to each other that the officer could not see, did not create a reasonable suspicion of criminal activity); Messer v. State, 609 *805 So.2d 164 (Fla. 2d DCA 1992)(holding that police officer did not have reasonable suspicion to stop defendant's truck, even though officer observed person approach defendant as he sat in his truck and person appeared to pass something to defendant, where officer saw only arm movement and did not see any drugs or money transferred); Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990)(holding that a police officer did not have a founded suspicion for a temporary detention of the defendant when he observed the defendant approach a car parked in a high crime area and talk to an unknown occupant of the car, who extended his hand, palm up, toward defendant, but the officer did not see anything in his hand nor see anything pass between the two); see also Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995)(discussing the court's reluctance to approve of a stop and search by an officer who has not actually seen money or drugs exchange hands, but noting that the presence of other factors, such as the officer's narcotics experience, an extended period of surveillance, reputation of the area for drug transactions, and involvement of a known drug dealer, could give rise to a reasonable suspicion of illegal drug activity).
Here, the officer candidly acknowledged that he had only a hunch that appellant and his companion were involved in a drug transaction. Not only did the officer testify that he was unable to see what was exchanged, he admitted that he was uncertain whether anything was actually exchanged between the men. Further, though the officer testified that he had three years of law enforcement experience, he did not say that he had any extensive or specialized narcotics training. He described the area as one known for drug activity, but he did not identify appellant or his companion as known drug dealers nor testify about any extended period of surveillance or observation of any other suspicious activity before approaching appellant.
We agree with both parties that the officer's initial contact with appellant was a consensual encounter, during which the officer could properly ask for appellant's name. See Popple v. State, 626 So.2d 185 (Fla.1993). We do not agree, however, that the events which followed, i.e., the officer's computer search and additional questioning of appellant following failure to confirm his name, necessarily converted the consensual encounter into a stop and detention. See O.A. v. State, 754 So.2d 717 (Fla. 4th DCA 1998)(holding that the juvenile was not seized during the time that police officer radioed the juvenile's name for a computer check and awaited a response). For purposes of our analysis, however, it does not matter whether we accept the officer's characterization of his conduct in confronting appellant with the computer search results as a detention. The significant point is that the officer had no reasonable suspicion of criminal activity at the time he "detained" appellant. See Ippolito, 789 So.2d at 426 (an officer's belief that an individual is lying does not, in an of itself, justify detaining him); Steele v. State, 537 So.2d 711 (Fla. 5th DCA 1989)(concluding that officer had no probable cause or reasonable suspicion to support either an arrest or a Terry stop where defendant lied about his name during a consensual encounter).
As explained above, to constitute a violation of section 901.36, Florida Statutes, the giving of a false name to a law enforcement officer must occur during an arrest or lawful detention. Because the officer in this case lacked reasonable suspicion to detain appellant and did not otherwise have probable cause to arrest him, he lacked probable cause to arrest appellant for giving a false name. Consequently, the arrest of appellant was unlawful and required *806 suppression of the items seized during the search incident to the arrest.
For the foregoing reasons, we reverse the order denying appellant's motion to suppress.
REVERSED.
KLEIN and STEVENSON, JJ., concur.