WARNER, J.
 

 In challenging his convictions for possession of cocaine and resisting without violence, appellant claims that the trial court erred in denying his motion to suppress and motion for judgment of acquittal, which were both based upon his contention that the officers who stopped him lacked reasonable suspicion of a crime. We agree that the totality of the circumstances did not amount to reasonable suspicion that a criminal act had occurred or was about to occur. We reverse.
 

 At the suppression hearing two officers with the Fort Lauderdale Police Department testified that they were working a burglary deterrence action plan on an August evening. Sometime between eleven and midnight they received a dispatch call regarding “a couple of black males standing behind a closed church in a dark alleyway.” The officers drove to the area and stopped, and one of them exited the vehicle and saw two black males sitting
 
 [1]
 
 under a tree in an area which was half-way between a closed church and an apartment complex. The church and the residences essentially backed up to one another, with an alley in between them. Thus, the backyard of the residential complex was on the alleyway on one side, and the back of the church was on the other side.
 

 Before announcing his presence, the officer observed the men sitting and rummaging into their pockets. He believed that they were in an area “where normal people wouldn’t be,” in the dark behind closed businesses and a church. The officers were on a team to deter burglaries, although the officers never testified that there had been burglaries in the area or that it was a “high crime” area. The officer’s intent at that point was to investigate the men. He did not intend to search them but just to make contact with them.
 

 The officer approached and announced his presence, saying “Police.” He did not order the men to stop. The men stood up and ran around the corner of the residence. The officer followed them and stopped them as they tried to enter the residence, briefly struggling with appellant Hunter. After the officer subdued Hunter, Hunter gave him an incorrect name. The officer arrested him, searched him, and found cocaine.
 
 [2]
 

 Based upon the totality of circumstances, the trial court found that the officers had reasonable suspicion of loitering and prowling sufficient to stop Hunter and his co-defendant. The officers had received a dispatch reporting “suspicious activity” of two males sitting behind a closed church in a dark alleyway. The first officer saw the men with their hands in their pockets, and the men ran away when the officers announced their presence. The court determined that when the officers captured Hunter and he gave them an incorrect name, they had probable cause to arrest him. The court denied the motion to suppress.
 

 At trial, Hunter moved for judgment of acquittal as to the resisting arrest charge, arguing that the officers had no basis to order him to stop and thus were not within the lawful performance of their duties. The court denied the motion, and the jury found Hunter guilty on both charges.
 
 *173
 
 Hunter appeals the denial of the motion to suppress as well as the denial of the motion for judgment of acquittal.
 

 We review a trial court’s ruling on a motion to suppress as a mixed question of law and fact. A reviewing court presumes the trial court’s findings as to historical facts to be correct but reviews rulings on questions of law de novo.
 
 Falls v. State,
 
 953 So.2d 627 (Fla. 4th DCA 2007);
 
 Hollingsworth v. State,
 
 991 So.2d 990 (Fla. 4th DCA 2008).
 

 To justify a stop, the police must have reasonable suspicion that criminal activity is afoot. In
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the Supreme Court explained:
 

 While “reasonable suspicion” is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The officer must be able to articulate more than an “inchoate and unparticularized suspicion or ‘hunch’ ” of criminal activity.
 
 [Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ].
 

 (footnote omitted). Following
 
 Wardlow,
 
 our supreme court recently summarized the requirements for a reasonable suspicion stop:
 

 A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur.
 
 See Davis v. State,
 
 973 So.2d 1277, 1279 (Fla. 2d DCA 2008);
 
 see also Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). In turn, whether an officer’s well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop.
 
 See Travers v. State,
 
 739 So.2d 1262, 1263 (Fla. 2d DCA 1999);
 
 McCloud v. State,
 
 491 So.2d 1164, 1165 (Fla. 2d DCA 1986).
 

 C.E.L. v. State,
 
 24 So.3d 1181, 1186 (Fla.2009).
 

 Hunter argues that the trial court erred in denying his motion to suppress the cocaine because the evidence failed to show that the officers had a reasonable suspicion that he had committed, was committing or about to commit a crime when they stopped him. The state contends that the totality of the circumstances supported the officers’ suspicion that Hunter was loitering and prowling when they observed him.
 

 In
 
 E.C. v. State,
 
 724 So.2d 1243, 1244-45 (Fla. 4th DCA 1999), we explained the elements of loitering and prowling:
 

 To prove a charge of loitering and prowling, under section 856.021, Florida Statutes, the state must prove that (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; and (2) the loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
 
 See State v. Ecker,
 
 311 So.2d 104, 106 (Fla.1975). With respect to the first element, the state must establish that the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved.
 
 See D.A. v. State,
 
 471 So.2d 147, 151 (Fla. 3d DCA 1985). The gist of this element is conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive
 
 *174
 
 crime and which must be alarming in nature, pointing toward an imminent breach of the peace or threat to public safety.
 
 Id.
 
 The statute is not directed at mere idling.
 
 Ecker,
 
 311 So.2d at 110;
 
 D.A.,
 
 471 So.2d at 152.
 

 Moreover, the conduct constituting the offense of loitering and prowling must be complete before any police action occurs.
 
 See Hollingsworth v. State,
 
 991 So.2d 990, 992 (Fla. 4th DCA 2008).
 

 In
 
 Hollingsworth,
 
 we reversed an order denying a motion to suppress because the officers had not observed any conduct which would satisfy the elements of loitering prior to attempting a stop of the defendant. The officers had been called in the evening to an area of closed businesses because of drug activity. While parked along the street, the officers observed Hollingsworth walking along the street. When she saw the officers, she turned and walked briskly in the opposite direction and disappeared around a corner. The officers pursued her and saw her ducking behind a vehicle. She continued to flee, and the officers detained her. They arrested her for loitering and prowling, and a search revealed drugs.
 

 Because the officers observed no conduct which raised a justifiable and reasonable alarm that a breach of the peace or threat to public safety was imminent, we held that the officers did not have reasonable suspicion to stop Hollingsworth. Mere presence in an area of closed businesses at a late hour was insufficient to raise an alarm of immediate threat to public safety. The mere fact that she fled and attempted to conceal herself after observing the police could not be “retroactively” used to support a suspicion of imminent criminal conduct.
 

 In contrast, where a defendant was observed at 2:15 a.m., secreting himself in hedges between two rooming houses, by an officer who recognized the defendant and knew that the houses were not the defendant’s stated residence, we agreed that such conduct was not usual for law abiding citizens.
 
 See Battle v. State,
 
 868 So.2d 587 (Fla. 4th DCA 2004). When the defendant attempted to hide something upon being observed by the officer, we held that the officer had reasonable suspicion that the defendant was loitering and prowling. Thus, the officer had reasonable suspicion to stop the defendant, who tried to walk away from the officer.
 

 In this case, the totality of the facts does not support the conclusion that the defendants were loitering and prowling. The officer received a dispatch reporting a call regarding men in a dark alleyway behind a closed church, which the officers termed a “suspicious incident.” The anonymous report does not provide reasonable suspicion to stop unless the officers themselves observed corroborating evidence.
 
 See Florida v. J.L.,
 
 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
 

 When the officers arrived, they observed Hunter and his co-defendant sitting equidistant between residences and a closed church. As in
 
 Hollingsworth,
 
 mere presence close to closed businesses in the late evening is insufficient to justify alarm of imminent criminal activity.
 
 See also D.S.D. v. State,
 
 997 So.2d 1191, 1193 (Fla. 5th DCA 2008). Because they were as close to the residences as they were to the churches, the facts do not suggest that they were engaged or were about to engage in criminal activity. It is equally likely that they were sitting outside their residence enjoying a summer evening.
 

 One officer saw the defendants rummaging in their pockets. Yet we fail to see how rummaging in one’s pockets while seated under a tree in a backyard consti
 
 *175
 
 tutes an act suggestive of criminal conduct. The officers did not describe this activity as an act of concealment, because the officers had not announced their presence before they observed this conduct.
 

 Although the defendants both fled toward their residence when the officers announced their presence, this flight does not retroactively supply the elements that an officer must observe to satisfy the requirements of loitering and prowling.
 
 See Hollingsworth.
 
 In the seminal case of
 
 State v. Ecker,
 
 311 So.2d 104, 110 (Fla.1975), our supreme court, after stating the two essential elements of loitering and prowling, said, “Clearly, when these elements are established
 
 and
 
 the individual either refuses or fails to properly identify himself or flees when confronted by a law enforcement office, the offense has been established.” (Emphasis and italics added). Mere flight from officers, without the officers having a factually based reasonable suspicion that criminal conduct either had occurred or was imminent, is insufficient.
 

 Because the facts do not show that the officers had any more than a bare suspicion of any incipient criminal conduct when they approached the seated Hunter, the trial court should have granted the motion to suppress the evidence seized as a result of the stop and seizure. Therefore, we reverse appellant’s conviction for possession of cocaine. Because the cocaine must be suppressed, appellant is entitled to discharge on the charge of possession of cocaine.
 

 We also reverse the denial of Hunter’s motion for judgment of acquittal as to the charge of resisting arrest without violence. To convict for resisting an officer without violence the state must show that: 1) the officer was engaged in the lawful execution of a legal duty; and 2) the action by the defendant constituted obstruction or resistance to the lawful duty.
 
 See Blue v. State,
 
 837 So.2d 541, 547 (Fla. 4th DCA 2003). The officers had no reasonable suspicion to stop Hunter. Therefore, they were not engaged in the lawful execution of a legal duty.
 
 See Davis v. State,
 
 973 So.2d 1277, 1279 (Fla. 2d DCA 2008). Hunter is entitled to discharge on this crime, as well.
 
 Id.
 

 Reversed and remanded with instructions for the court to discharge appellant on both charges.
 

 POLEN and STEVENSON, JJ., concur.
 

 [1]
 

 . At trial the officers testified that the men were sitting in chairs. The chairs were not mentioned at the motion to suppress.
 

 [2]
 

 . The second officer also testified to essentially the same facts.